UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TYRONE FURGESON and MYONG FURGESON, husband and wife; MYONG & SUNG, LLC, a Washington limited liability company d/b/a THE BROWNE'S STAR GRILL; and CONSTITUTIONALIST SERVICES, LLC, a Washington limited liability company d/b/a ESYONGS SECURITY AND CANINE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF TACOMA, a municipal corporation; GREG HOPKINS and "JANE DOE" HOPKINS, husband and wife, and the marital community thereof; ROBERT LUKE and PEGGY CAMPOS-LUKE, husband and wife, and the marital community thereof; PHIL FERRELL and DEBBIE FERRELL, husband and wife, and the marital community thereof; NICK STEPHENS and BOBBIE STEPHENS, husband and wife, and the marital community thereof; RUBEN CARTER and DARLENE CARTER, husband and wife, and the marital community thereof; DUANE KNOLL and ROXANN KNOLL, husband and wife, and the marital community thereof; and BRIAN TRUNK and "JANE DOE" TRUNK, husband and wife, and the marital community thereof,<br><br>Defendants. | Case No. C05-5490FDB<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' 42 U.S.C. §§ 1983 AND 1985 CLAIMS AND CLAIMS UNDER THE FOURTH, FIFTH, and FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION |

ORDER - 1

**INTRODUCTION**

This cause of action arises from a July 25, 2002 inspection of the Browne's Star Grill building by a building inspector from the City's Building and Land Use Services Department, a fire inspector from the Tacoma Fire Department, and an electrical inspector from Tacoma Power. Plaintiff Tyrone Furgeson allowed the inspection, stating, "Be my guest." (Ex. 1, p. 142.) Following the inspection, the team concluded that the hazards were such that abatement was the appropriate action and cut electrical power to the building and a "Do Not Occupy" notice was posted on the bar and grill on the same day, July 25, 2002. The necessary repairs were made by Plaintiffs and, following re-inspections by the City, Browne's Star Grill reopened on September 6, 2002.

Defendants move for summary judgment on Plaintiffs' 42 U.S.C. §§ 1983 and 1985 claims, and further move for dismissal of Plaintiffs' claims under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

Plaintiffs also allege harassment and cite four interactions:

First, in May 2002, Officer Luke and Plaintiff Tyrone Furgeson had a conversation regarding individuals loitering outside Browne's, with Luke expressing concern about criminal activity among the loiterers around Browne's as well as Browne's use by fleeing suspects to avoid police.

Second, in June 2002, Plaintiff Tyrone Furgeson complained to Officer Hopkins about Officer Luke's abrasive attitude, and Hopkins responded there was nothing he could or would do.

Third, on January 26, 2003, Officer Luke asked Tyrone Furgeson to eject a known drug dealer on the premises, Furgeson refused, and Furgeson states that Luke responded with an expletive.

Fourth, on June 28, 2003, Tacoma Police Department's Mobile Command Unit parked across the street from Browne's for several hours

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the moving party establishes that there are no genuine issues

ORDER - 2

of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

Summary judgment is proper if a defendant shows that there is no evidence supporting an element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**DISCUSSION**

***A.  Claims under 42 U.S.C. § 1983***

To establish a cause of action under Section 1983, a plaintiff must demonstrate (1) that a person has deprived the plaintiff of a federal constitutional or statutory right, and (2) that the person acted under color of state law.

There is no dispute that Defendants were acting under color of state law.

The Plaintiffs' assertion of a violation of the Fourteenth Amendment (deprivation of property without due process and denial of equal protection) rests on Plaintiffs' assertion that Browne's closure was due to an unspecified complaint and that the closure occurred because the clientele of Browne's was predominantly African American. Nevertheless, Defendants point out that Plaintiffs do not dispute multiple code violations and agree that the City has an obligation to enforce its own codes. Plaintiffs must show, therefore, that the laws are addressed in a discriminatory manner or impose different burdens on different classes of people. *See Christy v. Hodel*, 857 F.2d 1324 (9th Cir. 1988), *cert. denied* 490 U.S. 1114 (1989). "The conscious exercise of some selectivity in [the]

ORDER - 3

enforcement [of an otherwise nondiscriminatory law] is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Bordenkircher v. Hayes*, 434 U.S. 357 (1978). Defendants assert that Plaintiffs offer no evidence that the City's enforcement of building and fire codes is based upon an unjustifiable standard or upon any arbitrary classification.  The inspections of July 23, 2002 were aimed at six separate nightclub and entertainment establishments, not solely at Browne's Star Grill, and Browne's was not the only club found to be in violation of various code provisions.

      Plaintiffs assert their equal protection claim on behalf of their former patrons, alleging that the enforcement of the building and fire codes were motivated by a racial animus towards the patrons of Browne's Star Grill, who are largely African-American.  "A white plaintiff generally does not have standing under Section 1983 solely for the purpose of vindicating the rights of minorities who have suffered from racial discrimination." *Maynard v. City of San Jose*, 37 F.3d 1396, 1402 (9th Cir. 1994).  Assuming Plaintiffs even have standing, the claim still fails, argue Defendants, because while they offer Officer's Luke's statement "We don't have a problem.  It's your clientele," there is no evidence but Plaintiffs' assumption that this refers to race as opposed to criminal activity. Ordinarily due process requires a hearing prior to a deprivation of a significant property interest, *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978).  Only in extraordinary circumstances involving "the necessity of quick action by the State or the impracticality of providing any [meaningful] pre-deprivation process" may the government dispense with the requirement of a hearing prior to the deprivation.  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982). Summary governmental action taken in emergencies and designed to protect the public health, safety, and general welfare does not violate due process. *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 299-300 (1981).  Here, Defendants assert that there is a legitimate public health, safety and welfare interest in permitting city officials to immediately abate a "derelict building

ORDER - 4

or structure" as defined in Tacoma Municipal Code 2.01.060 (Building Code). "Derelict buildings" (the standard by which Browne's was classified following the comprehensive inspection of July 25, 2002) are required to have utilities immediately cut off and to be posted as "Do Not Occupy." Moreover, Defendants point out that extensive post-closure review and remedies exist. See TMC 2.01.060. Plaintiffs were notified contemporaneously with the July 25, 2002 inspection of the required measures and repairs as well as appeal procedures under the Tacoma Municipal Code. (See Ferrell and Stephens Affs., and Homan Supp. Aff. Ex. 7 to Dkt. 32; Ex. 9 (7/31/02 letter regarding fire hazards), and Ex. 10 (8/2/02 letter regarding electrical hazards). Thus, conclude Defendants, Plaintiffs were not deprived of any process that was due.

To establish a violation of substantive due process, the plaintiffs must prove that the government's action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). Where the governmental action has a substantial relation to the general welfare, the action is not arbitrary and not violative of substantive due process. *Armendariz v. Penman, 31 F.3d 860 (9th Cir. 1994), aff'd in part*, 75 F.3d 1311 (1996).

The Defendants are entitled to summary judgment on the Section 1983 claim. Plaintiffs have failed to come forward with evidence to show that they have a prima facie due process or equal protection claim. Summary governmental action taken in emergencies and designed to protect the public health, safety, and general welfare does not violate due process. *Hodel v. Virginia Surface Mining & Reclamation Ass"n*, 452 U.S. 264, 299-300 (1981). Deputy Fire Marshal Phil Ferrell's Affidavit explains that he was part of a task force formed to perform nightclub inspections in downtown Tacoma. On the evening of July 23, 2002, six Tacoma establishments were inspected: Club Silverstone, Jillian's, Destiny's, the Rock, Dock Street Landing, and Browne's Star Grill, and the Rock posed the greatest imminent threat and was closed immediately that evening. At Browne's, while noting significant electrical and fire hazards, it was determined that the team would need to

ORDER - 5

return with a building inspector and electrical inspector, because the hazards noted were outside the team's abilities to adequately address.

On July 25, 2002, Electrical Inspector Ruben Carter and Building Inspector Nick Stephens were called to Browne's Star Grill.  Mr. Carter found "an enormous number of exposed, live wires throughout the premises of Browne's," and while Mr. Furgeson would indicate that certain exposed wires were not "hot," a test of the wire demonstrated there was electricity flowing through it. (Carter Aff. P. 3.)  Mr. Carter also observed an exposed wire touching and energizing a metal table. ( *Id.* )  While Mr. Carter did not find enough life-safety issues in the apartments above Browne's, he was "gravely concerned by the multiple life and safety hazards" observed in the nightclub and determined that "shutting off power downstairs would help mitigate the hazards the nightclub's electrical condition posed to the upstairs apartments, thus alleviating any need to summarily evict the tenants." ( *Id.* p. 4)

Building Inspector Nick Stephens observed that many of the plumbing pipes and fixtures were improperly installed, the mechanical equipment in the roof was improperly anchored, an air conditioning unit over the stairway needed to be structurally secured, the walls in the main bar area needed fire taping and securing, and there were holes in the ceiling and holes in the floors, which were also unevenly surfaced.   In the apartment units on the second floor there was inadequate ventilation, inadequate wiring, two units did not even have electrical power, plumbing fixtures were inadequate, there was insufficient ingress/egress, there were roof leaks, broken glass, deteriorating plaster, and inadequate lighting, as well as a lack of gasketted doors and inadequate smoke detectors.  Under these circumstances Mr. Stephens concluded that Browne's met the "derelict building" classification warranting it being posted as "Do Not Occupy."

The Defendants are entitled to summary judgment on the Section 1983 claim.

***Claim under 42 U.S.C. § 1985***

To maintain a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2)

ORDER - 6

to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States. *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980)(citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). This statute "does not apply to all conspiratorial tortuous interferences with the rights of others, but only those motivated by some class-based, invidiously discriminatory animus." *Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987). Moreover, § 1985 "is not to be construed as a general federal tort law." *Gerritsen v. De la Madrid Hurtado*, 819 F.2d 1511, 1518-19 (9th Cir. 1987). To successfully bring a cause of action under § 1985(3), a plaintiff must be a member of the class discriminated against. *RK Ventures v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002). Because neither Tyrone nor Myong Furgeson is African-American or a member of any class that the government has determined "requires and warrants special federal assistance in protecting their civil rights," *see Maynard v. City of San Jose*, 37 F.3d 1396, 1403 (9th Cir. 1994), they lack standing to assert a Section 1985 claim.

Plaintiffs' consent to the inspection obviates the need for a warrant, thus Plaintiffs' Fourth Amendment claim fails. Administrative searches to enforce municipal fire, health, or housing inspection programs are generally subject to the Fourth Amendment warrant requirement unless they fall within a recognized exception. *Torres v. Puerto-Rico*, 442 U.S. 465 (1979). Consent to search is one long-standing, recognized exception. *See Illinois v. Rodriguez*, 497 U.S. 177 (1990). Here, Plaintiff Tyrone Furgeson gave the inspectors consent to search on July 25, 2002, when they arrived at Browne's Star Grill, and he stated, "Be my guest."

Finally, the temporary closure of Plaintiffs' business due to code violations is not a taking requiring compensation. Courts divide takings claims into two classes: permanent physical occupations and regulatory takings, *Levald v. City of Palm Desert*, 998 F.2d 680, 684 (9th Cir. 1993). A physical taking occurs when the government permanently physically occupies private

ORDER - 7

property, *Loretto Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982), and such taking generally requires compensation. *Id.* A regulatory taking occurs when private property's value or usefulness is diminished by a regulation that does not involve physical occupation of the property. *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978). "Where the government merely regulates the use of property, compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." *Levald*, 998 F.2d at 684 (quoting *Yee v. City of Escondido*, 503 U.S. 519 (1992). " 'Normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like' ... as well as orders temporarily prohibiting access to crime scenes, businesses that violate health codes, fire-damaged buildings, or other areas" have long been considered permissible exercises of the police power that do not require compensation. *Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*, 535 U.S. 302 (2002).

Here, argue Defendants, the closure of Browne's for documented fire, building, and electrical hazards is a permissible exercise of the police power like those articulated in *Tahoe-Sierra*, and, consequently, Defendants' actions do not constitute a taking requiring compensation as contemplated by the Fifth Amendment.

Plaintiffs argue that their association with their African-American clientele is sufficient to give them standing to assert their Section 1985 claim. Plaintiffs' showing is insufficient. Plaintiffs cite case law that is distinguishable from the facts in this case. *Yesteryears, Inc. v. Waldorf Restaurant, Inc.*, 730 F. Supp. 1341 (D. Md. 1989) involved white tenants who were found to have standing to pursue a civil rights action against their landlords for their allegedly discriminatory actions toward the plaintiffs' black nightclub patrons, driving them away and causing plaintiffs economic loss. Plaintiffs assert only one remark, about Browne's clientele and a statement that a Thai restaurant would do better in this area than a "black restaurant." This single allegation is nothing like that

ORDER - 8

which occurred in *Yesteryears,* and it is insufficient to provide standing to Plaintiffs. Under Ninth Circuit law, a plaintiff must be a member of the class discriminated against to claim the benefits of Section 1985(3). *Clemes v. Del Norte County Unified School District*, 843 F. Supp. 583, 592 (1994), quoting *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 721 (9th Cir.), *cert. denied*, 454 U.S. 967 (1981). Moreover, there is no evidence to show that there was any conspiracy between two or more persons motivated by some class-based, invidiously discriminatory animus. *See Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir. 1996)("[T]he plaintiff must demonstrate discriminatory purpose in that the defendants selected the particular course of action 'because of' not merely 'in spite of' its adverse effects upon an identifiable group." (Quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 272 (1993). Defendants are entitled to summary judgment on the Section 1985 claim.

Plaintiffs argue that summary judgment should be denied as to their Fourth Amendment claim because the defendants exceeded the scope of the consent granted by Plaintiff and the inspection was a pretext for obtaining evidence of criminal activity, since two officers accompanying the inspectors were seen opening file cabinets and desk drawers. Officer Luke indicated that he was looking for illegal electrical appliances. Plaintiff Myong Furgeson has testified that the police were frequently in her bar and that the City parked its Mobile Command Center outside of their business on June 28, 2003.

Plaintiffs' argument on this issue fails. There is nothing unreasonable about Officer's Luke's actions, and a single occurrence does not indicate there was a routine of searching and staking out Browne's. The parking of the Mobile Command Unit in front of Browne's does not enlighten the issue of consent.

Plaintiffs argue that the Fifth Amendment's "Takings Clause," applicable to the states through the Fourteenth Amendment, requires that "private property [shall not] be taken for public use, without just compensation," and that no person shall be deprived of property without "due

ORDER - 9

process of law." Plaintiffs argue that the City used a strategy of code enforcement to force owners to move or sell if they have not been fighting crime or if they are connected to illegal activity. Plaintiffs cite *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996). There it was alleged that the City of San Bernardino cited building code violations, forcing the tenants to move out while the building code violations were to be fixed, but refused to issue permits for repairs, thus forcing the landlords out of business so that the area could be cleared for a shopping center.

The case with Browne's Star Grill is nowhere close to the facts in *Armendariz*, however. Plaintiffs in this case have not demonstrated that all economically viable use of the property was foreclosed to them; the upstairs apartments were not closed and the residents were not evicted. Browne's made the repairs and reopened in slightly under two months. The delay involved in this case is within the normal range for obtaining building permits and bringing the property up to code and compensation is not required. *See Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*, 535 U.S. 302 (2002). Another rule for routine government processes would be prohibitively expensive or encourage hasty decision-making. *Id.* at 335.

ACCORDINGLY, IT IS ORDERED: Defendants' Motion for Summary Judgment on Plaintiffs' 42 U.S.C. §§ 1983 and 1985 claims and claims under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution [Dkt. # 30] is GRANTED and these claims are DISMISSED.

DATED this 15th day of November, 2006.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 10